**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
DOMONIQUE WILLIAMS,                     )
                                        )
                    Plaintiff,          )
                                        )       Civil Action
v.                                      )       No. 25-cv-12098-PBS
                                        )
CITY OF BOSTON,                         )
                                        )
                    Defendant.          )
_____ )

**MEMORANDUM AND ORDER**

June 18, 2026

Saris, J.

**INTRODUCTION**

Plaintiff Domonique Williams worked for Defendant City of Boston (the "City") as the Deputy Director of the City's Office of Equity from March 2021 to December 2021. For most of this period, Celina Barrios-Millner served as the Chief of the Office of Equity. Williams alleges that Barrios-Millner improperly pressured her and others in the office to support a candidate in the November 2021 Boston mayoral election and ultimately terminated her because she supported a different candidate. Williams subsequently sued the City under 42 U.S.C. § 1983, claiming in her second amended complaint that she was terminated in retaliation for exercising her First Amendment rights.

The City now moves to dismiss Williams' second amended

1

complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The City argues that Williams has failed to adequately allege that the decision to terminate her was made by an individual with final policymaking authority as required to establish municipal liability under § 1983.[1]

After review of the briefing and the second amended complaint, the City's motion to dismiss (Dkt. 33) is **ALLOWED**.

## BACKGROUND

The Court draws the following background from the well-pleaded facts in Williams' second amended complaint. See Torres-Estrada v. Cases, 88 F.4th 14, 19 (1st Cir. 2023).

Williams was hired by the City in March 2018 to serve as the Deputy Director for the City's Office of Housing Stability. In March 2021, she was promoted to Deputy Director of the City's Office of Equity. Barrios-Millner became the Chief of the Office of Equity the following month, functioning as Williams' supervisor.

On October 4, 2021, Williams began working on the Boston mayoral campaign of Annissa Essaibi George. Barrios-Millner was aware of Williams' work for the Essaibi George campaign. At a meeting on October 6, Barrios-Millner encouraged staff in the

---

[1] Williams' second amended complaint also asserts a claim alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq. Williams abandoned this claim in her opposition to the City's motion.

Office of Equity, including Williams, to support another mayoral candidate, Michelle Wu, by stating that Essaibi George would dismantle the Office of Equity and that the staff would therefore lose their jobs.

The following day, Barrios-Millner and Williams discussed the October 6 meeting. Barrios-Millner acknowledged that discussing the election and endorsing a candidate was unprofessional behavior. She also apologized to Williams. After this meeting, however, Barrios-Millner sent Williams a memorandum that denied inappropriately discussing the election during the meeting.

Barrios-Millner subsequently circulated a memorandum within the Office of Equity criticizing Williams' work and thereafter limited her participation in meetings and other workplace communications. Barrios-Millner also impeded Williams' access to information necessary to perform her duties and enabled another employee to take credit for work with which Williams had been substantially involved.

On December 16, 2021, Barrios-Millner informed Williams that she was being terminated as of December 31. Barrios-Millner told Williams that the Office of Equity would no longer be funded, thereby eliminating her role. Williams was also told that her health insurance would extend until the end of 2021 and that she would receive a payout for the vacation time she had planned for the end of the month, but she did not receive either benefit.

3

Ultimately, the Office of Equity was restructured but not defunded. Williams was the only member of the office who was terminated, although some members were reassigned to other jobs with the City.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (cleaned up). This standard requires a court to "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

4

**DISCUSSION**

In her § 1983 claim, Williams alleges that she was terminated in retaliation for exercising her First Amendment right to support a certain candidate in the Boston mayoral election. The City contends that this claim must be dismissed because Williams has failed to plausibly allege that the City is liable for any constitutional violation. Specifically, the City argues that Williams has not adequately alleged that the decision to terminate her was made by an individual with final policymaking authority as required to establish municipal liability under § 1983.

A municipality cannot be held liable under § 1983 via a theory of respondeat superior, or, in other words, "solely because it employs a tortfeasor" who commits a constitutional violation. Lavigne v. Great Salt Bay Cmty. Sch. Bd., 146 F.4th 115, 123 (1st Cir. 2025) (emphasis omitted) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)), cert. denied, __ S. Ct. __ (2026) [2026 WL 858415]. Rather, "it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be liable." Id. (alteration in original) (quoting Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st Cir. 2005)).

"A single decision by a municipal policymaker" may suffice to establish the government policy necessary to support municipal

liability under § 1983, but it does so "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)). Municipal liability can arise from a single employment-related decision made by an official possessing final policymaking authority over that type of decision. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 769-70 (1st Cir. 2010); Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008). Determining "[w]hether an official is a final policymaker is . . . a question of law." Walden v. City of Providence, 596 F.3d 38, 55 (1st Cir. 2010). The inquiry requires courts to "look to state law, including 'valid local ordinances and regulations,' for descriptions of the duties and obligations of putative policymakers in the relevant area at issue." Freeman, 714 F.3d at 38 (quoting Walden, 596 F.3d at 56).

Here, Williams has failed to state a claim of municipal liability based on the decision to terminate her employment. She alleges that Barrios-Millner "informed" her of the termination decision, Dkt. 30 ¶ 15, but does not identify who actually made that decision. The Court therefore lacks any basis for determining whether the relevant decisionmaker possesses final policymaking authority with respect to the termination of employees in the Office of Equity. Even assuming, as Williams asserts in her

6

opposition to the City's motion to dismiss, that Barrios-Millner was the decisionmaker behind her termination, Williams has not offered any facts or cited to any state or local law indicating that the Chief of the Office of Equity has the relevant final policymaking authority. This omission is especially notable given that the Court granted Williams leave to amend after a hearing on the City's motion to dismiss a prior iteration of the complaint in which the Court indicated that Williams' allegations were insufficient to adequately allege municipal liability via the decision of a final policymaker. Williams' second amended complaint includes no changes that respond to this deficiency.

Absent information about the relevant decisionmaker and the decisionmaker's authority to make final policy under state and local law, Williams' second amended "complaint fails to state more than respondeat superior liability on the part of the" City. Freeman, 714 F.3d at 38. The Court therefore dismisses Williams' § 1983 claim. See id. (affirming dismissal of municipal liability claim under § 1983 where the "complaint . . . reference[d] no state or local laws establishing the policymaking authority of any individual or group of individuals" engaged in the alleged misconduct); see also Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002) (affirming grant of summary judgment to a town based on its police chief's actions where the plaintiff failed to show that the

police chief had relevant final policymaking authority).[2]

## ORDER

For the foregoing reasons, the City of Boston's motion to dismiss (Dkt. 33) is **ALLOWED**.


SO ORDERED.


/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

---

[2] Municipal liability for a single act under § 1983 may alternatively be established via ratification, i.e., where "authorized policymakers approve a subordinate's decision and the basis for it." Lavigne, 146 F.4th at 125 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion)). Williams does not raise this theory either in her second amended complaint or her opposition to the City's motion to dismiss. In any event, Williams does not allege that any final policymaker ratified the decision to terminate her.